**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Thomas Sorrells, Shari Sorrells; *Plaintiffs,* v. Specialized Loan Servicing, LLC; *Defendant.* | Case No. 17-cv-8583 Honorable Magistrate Judge: |

## COMPLAINT

NOW COMES the Plaintiffs, THOMAS SORRELLS ("Mr. Sorrells") and SHARI SORRELLS ("Mrs. Sorrells") by and through their attorneys, ZAMPARO LAW GROUP, P.C., and complaining of the Defendant SPECIALIZED LOAN SERVICING, LLC ("SLS"), allege as follows:

## NATURE *of the* ACTION

1. Mr. and Mrs. Sorrells bring this action in response to Defendant SLS's unlawful acts in servicing a Home Equity Line of Credit ("HELOC"): SLS misstated the maturity date of their loan; demanded nearly $15,000 in improper late charges; failed to respond to, reasonably investigate, or resolve any of the Sorrells' numerous written disputes; and wrongfully initiated foreclosure proceedings against them in the Circuit Court of the 19th Judicial Circuit of Illinois.

2. Plaintiffs allege causes of action under the Fair Credit Billing Act ("FCBA") and its implementing regulations, 15 U.S.C. §1666 & 12 CFR 226.13; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.*; and for breach of contract.

## JURISDICTION *and* VENUE

3. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 & 1337, as the actions arise under the laws of the United States.

4. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims under 28 U.S.C. § 1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this District and Defendant's actions affected the Sorrells within this District.

## *The* PARTIES

6. Mr. Sorrells is a natural person who at all relevant times resided and currently resides in this District.

7. Mrs. Sorrells is a natural person who at all relevant times resided and currently resides in this District.

8. Defendant SLS is a wholly-owned subsidiary of its sole member, Specialized Loan Servicing Holdings LLC. Specialized Loan Servicing Holdings LLC is a wholly-owned subsidiary of Computer Share Mortgage Services LLC. Computer Share Mortgage Services LLC is a wholly-owned subsidiary of its sole member Computershare US Investments LLC. Computershare U.S. Investments LLC is a wholly-owned subsidiary of its sole member Computer Share Holdings, Inc. Computer Share Holdings, Inc. is incorporated in Delaware and maintains its principal place of business in Illinois and is thus a citizen of Delaware and Illinois.

## FACTS

## I. *The Origination of the HELOC & Transfer to SLS*

9. On September 29, 2005, Mr. Sorrells and Mrs. Sorrells granted a mortgage to Morgan Stanley Credit Corporation to secure a HELOC in favor of Morgan Stanley Credit Corporation in the amount of $300,000 on the property c/k/a 21611 Morningdove Court, Kildeer, Illinois, 60047 (the "Subject Property").

10. At all relevant times, Mr. and Mrs. Sorrells lived—and still live—at the Subject Property as their primary residence.

11. The terms of the HELOC are memorialized in the Illinois Agreement and Disclosure Statement the Sorrells executed concurrently with the mortgage (the "Agreement"). A copy of said Agreement is attached and incorporated hereto as Exhibit 1.

12. Paragraph one of the Agreement states that "[y]our Account and credit privileges will terminate 10 years from the date of this Agreement (the "Termination Date"), unless sooner cancelled pursuant to the terms of this Agreement." See Exhibit 1.

13. After closing, Morgan Stanley Credit Corporation sent the Sorrells a letter indicating that due to a delay in the funding of the loan, the effective date of the Agreement was October 6, 2015, and the Maturity Date was November 6, 2015. A copy of that letter is attached and incorporated hereto as Exhibit 2.

14. The Sorrells timely made all interest-only payments due under the Agreement through June of 2014, when the servicing rights of the HELOC were assigned to SLS.

15. Before even accepting a payment from the Sorrells, SLS bungled the servicing of his loan: it waited until June 9, 2014 to send a letter stating that servicing of the HELOC was transferring on June 1, 2014 of 2014 and that the prior servicer would not accept payments after May 31, 2014.

16. After making a double payment as a result, Mr. Sorrells was told by an SLS employee that his extra funds had been applied to his principal, and they considered the matter resolved.

II. *SLS Severely Mishandles the Servicing of the Loan*

17. The Sorrells timely made all interest-only payments as required under the HELOC through June of 2015.

18. On June 16, 2015, SLS sent Mr. Sorrells a letter claiming that his HELOC was entering a "repayment period" according to its terms and that, as a result, his required payment would switch from interest-only to principal and interest. A copy of that letter is attached and incorporated hereto as Exhibit 3.

19. The Agreement calls for no "repayment period" or switch to principal and interest payments.

20. On August 4, 2015, SLS sent Mr. Sorrells a 60-day maturity notice letter stating that "any outstanding balance on your loan must be paid in full, on or before 11/2015." A copy of that letter is attached and incorporated hereto as Exhibit 4.

21. On August 20, 2015, SLS sent Mr. Sorrells a 30-day maturity notice letter again stating that "any outstanding balance on your loan must be paid in full, on or before 11/2015." A copy of that letter is attached and incorporated hereto as Exhibit 5.

22. On August 21, 2015, SLS sent Mr. Sorrells a final notice letter again stating that "any outstanding balance on your loan must be paid in full, on or before 11/2015." A copy of that letter is attached and incorporated hereto as Exhibit 6.

23. Confused by the three successive letters with contradictory information, and the fact that the Agreement does not call for any "repayment period," Mr. Sorrells wrote SLS letters

seeking clarification of his options for paying off the loan on August 25 and September 13, 2015.

24. In response, SLS sent Mr. Sorrells a payoff letter dated September 23, 2015 stating that the total amount due and owing on the HELOC was $299,138.90. A copy of that payoff letter is attached and incorporated hereto as Exhibit 7.

25. Despite receiving these contradictory notices, Mr. Sorrells timely made his September and October 2015 payments as required under the HELOC.

26. SLS failed to apply his payments but instead put them into a "suspense account."

27. SLS then sent Mr. Sorrells a "balloon payment due" notice dated October 12, 2015 along with a payoff letter also dated October 12, 2015. Copies of that notice and the payoff letter are attached and incorporated hereto as Exhibits 8 & 9, respectively.

28. Exhibit 9, the payoff letter dated October 12, 2015, indicates that a $14,913.97 late charge had been applied to his account, bringing the total amount due to $314,545.10. That late fee represents 5% of $298,279.40.

29. As shown above, the Sorrells' HELOC was not to mature until November 6, 2015; thus this late fee was imposed prior to the full balance of the HELOC coming due.

30. In fact, Mr. Sorrells was not late at all or in breach of this agreement whatsoever when this late charge was imposed and demanded of him.

31. Confused and frustrated, Mr. Sorrells wrote a letter to SLS on October 21, 2015, demanding that the late fee be removed before he pay off the HELOC. A copy of that letter is attached and incorporated hereto as Exhibit 10.

32. SLS responded to Mr. Sorrells' earlier letters with a form letter dated October 21, 2015 stating they would respond to his inquiry within 30 days.

33. Mr. Sorrells wrote several more letters through mid-November, 2015, seeking an explanation for the late fee and inquiring as to his options to pay off the loan. Mr. Sorrells stated in those letters that he would pay off the loan immediately if the payoff statement was corrected and the improper late fee removed.

34. Finally, on November 16, SLS sent Mr. Sorrells a letter substantively responding to his numerous inquiries. A copy of that letter is attached and incorporated hereto as Exhibit 11.

35. That letter indicates that in researching Mr. Sorrell's account, they found no errors, and cited the "Promissory Note and Deed of Trust" as supporting their contention that no error had occurred.

36. In response to that letter, Mr. Sorrells again wrote to SLS and offered "to pay in full all interest and principal (no late fees)." A copy of that letter is attached and incorporated as Exhibit 12.

37. In that letter, Mr. Sorrells asked SLS to call his cell phone or email him a corrected statement and that he would pay the full amount within 5 business days.

38. At the time, the Sorrells had more than enough funds to make said payment.

39. On November 24, 2015, SLS sent Mr. Sorrells a notice of default demanding that he pay a new amount: $328,834.09. It is unclear how SLS arrived at that number. A copy of that letter is attached and incorporated hereto as Exhibit 13.

40. SLS sent the Sorrells another form letter on December 1, 2015, stating that SLS would respond to their disputes within 30 days. Mr. Sorrells responded with a letter dated December 8, 2015 stating that Mr. Sorrells would be willing to make interest payments monthly while waiting for a correct payoff statement. A copy of that letter is attached and incorporated hereto as Exhibit 14.

41. SLS replied with a letter dated December 28, 2015, stating that SLS had not applied Mr. Sorrells's October monthly payment because "it was not for the entire amount due." A copy of that letter is attached and incorporated hereto as Exhibit 15.

42. That letter also stated that SLS had again conducted an investigation and determined that no error had occurred.

43. Throughout 2016, Mr. Sorrells sent SLS numerous letters and emails disputing the differing amount due in statements he was receiving and demanding that he be given an accurate payoff amount.

44. SLS responded numerous times with conclusory letters claiming that no error had occurred in its servicing of the HELOC, and sent numerous payoff letters, billing statements, and maturity notices with differing payoff amounts and fees.

45. SLS caused a foreclosure lawsuit to be filed against Mr. Sorrells and his wife Shari on November 21, 2016, in the Circuit Court of the 19th Judicial District, Illinois, case no. 16-CH-1721, based on an alleged default of the HELOC.

46. In February of 2017, in response to a complaint Mr. Sorrells filed with the Consumer Financial Protection Bureau, Mr. Sorrells was contacted by Fred Korbs who identified himself as SLS's vice president of customer support.

47. Mr. Sorrells explained the nature of his numerous problems with SLS to Mr. Korbs, who then wrote Mr. Sorrells an email confirming their telephone conversation and promising to resolve his issues. A copy of that email is attached and incorporated hereto as Exhibit 16.

48. Despite this, Mr. Sorrells received another billing statement dated February 13, 2017, that had removed the improper late fee but listed a series of new incorrect charges and fees to his account, such that his new payoff would be $328,290.28. A copy of that billing statement is attached and incorporated hereto as Exhibit 17.

49. Mr. Sorrells wrote an email to Mr. Korbs on February 22, 2017, disputing the new incorrect amounts in the February 13, 2017 billing statement. A copy of that email is attached and incorporated hereto as Exhibit 18.

50. In reviewing a loan payment history provided by SLS, Mr. Sorrells discovered that when his loan has transferred to SLS, it had improperly put one of his payments into a suspense account; Mr. Sorrells also disputed this amount in Exhibit 18.

51. Mr. Korbs confirmed via email he received this dispute and responded with a representation that SLS would resolve Mr. Sorrells's issues.

52. However, on March 19, 2017, Mr. Sorrells received another inaccurate payoff letter and wrote Mr. Korbs an email disputing its figures. A copy of that email is attached and incorporated hereto as Exhibit 19.

53. Mr. Korbs failed to address either dispute or correct any of the billing errors.

54. Mr. Korbs did not communicate with Mr. Sorrells for over two months after said communication, and Mr. Sorrells received no substantive response to his dispute of the February 13, 2017 billing statement.

55. In late February of 2017, Mr. Sorrells was forced to engage the assistance of the law firm Nisen & Elliott LLC to help him with the foreclosure case SLS caused to be filed against him and to help him try to resolve his issue with SLS.

56. SLS sent Mr. Sorrells a letter dated April 27, 2017, titled "Notice of Default and Intent to Foreclose," and demanded that Mr. Sorrells pay $313,886.17 immediately. A copy of that letter is attached and incorporated hereto as Exhibit 20.

57. Because Mr. Sorrells had not heard anything from Mr. Korb, he faxed a letter to SLS on May 15, 2017 disputing the new payoff figures and again requesting that SLS send him a corrected billing statement or payoff letter so that he could pay off the HELOC. A copy of that letter is attached and incorporated hereto as Exhibit 21.

58. On June 26, 2017, Mr. Korb finally responded to Mr. Sorrells's many emails asking him why he had stopped communicating with him regarding his disputes.

59. In said email, Mr. Korb alleges that:

> **"All of the collection efforts after the resolution of the late charge being assessed to your loan have been in line with the regulation. I have made offers to remove interest accrued since the maturity of the loan as well as directly refund the items disputed in 2017 from 2012 and 2014 which were not determined to be errors on the part of SLS, PHH, or Morgan Stanley. These offers were made not as any admission of wrongdoing but were made in an effort to settle the outstanding balance on your loan to avoid further collection efforts. You have rejected both of those offers."**

60. To the contrary, Mr. Sorrells had never rejected any offer from SLS; he simply pointed out errors in the numerous payoff letters sent to him and SLS failed to correct those errors.

61. A copy of that email is attached and incorporated hereto as Exhibit 22.

62. Mr. Sorrells and Mr. Korb exchanged numerous emails through the summer and fall of 2017, during which Mr. Korb impugned Mr. and Mrs. Sorrells' character, sent numerous incorrect payoff amounts, falsely implied that the Sorrells were refusing to pay the amount legitimately due, and refused to issue corrective information to the credit bureaus as he had earlier promised to do.

63. Finally, in September of 2017, Mr. Sorrells was given a payoff figure of $295,778.96.

64. Mr. Sorrells sent a check in that amount to SLS, and SLS accepted said check in satisfaction of the HELOC.

65. SLS has since refused to offer the Sorrells any compensation for the attorneys' fees incurred; for its wrongful foreclosure and the resulting embarrassment; for the emotional turmoil; stress and frustration from having to deal with SLS's egregious behavior; or for the hundreds of hours SLS's unlawful behavior stole from their life.

### COUNT I:
### Violation *of the* Fair Credit Billing Act

66. Plaintiffs incorporate and reallege paragraphs 1-65.

67. SLS is a "creditor" as that term is defined at 15 U.S.C. 1602(g).

68. Mr. Sorrells and Mrs. Sorrells are "consumers" as that term is defined at 15 U.S.C. 1602(i).

69. Mr. Sorrells's dispute of the above-mentioned February 13, 2017 billing statement constitutes notice of a "billing error" within the meaning of 15 U.S.C. § 1666(b).

70. Mr. Sorrells delivered notice of a billing error dispute within the meaning of 15 U.S.C. § 1666(3); furthermore, SLS acknowledged receipt of said disputes.

71. SLS failed to comply with the requirements of the FCBA in one or more of the following ways:

    i. SLS failed to notify the Sorrells they need not pay the amount in dispute until SLS complied with the FCBA;

    ii. SLS failed to timely comply with appropriate error dispute resolution procedures;

    iii. SLS failed to timely conduct any reasonable investigation of the dispute; and

    iv. SLS failed to timely correct the error.

72. As a proximate result of this conduct, Mr. and Mrs. Sorrells suffered actual damages:

    i. SLS caused Mr. Sorrells and Mrs. Sorrells to incur attorney's fees to address the state foreclosure action and seek assistance resolving his error with SLS;

    ii. SLS caused Mr. Sorrells and Mrs. Sorrells to spend hundreds of hours attempting to resolve numerous errors and correct SLS numerous attempts to add improper charges and fees to their account;

    iii. SLS caused Mr. Sorrells and Mrs. Sorrells to experience an extreme amount of anguish, frustration, stress, pain, and suffering.

WHEREFORE, Plaintiff Mr. and Mrs. Sorrells respectfully request this Honorable Court:

I. Find that SLS violated the Fair Credit Billing Act as described above;

II. Enter a judgment for Mr. and Mrs. Sorrells and against SLS for actual damages, statutory damages under 15 U.S.C. § 1640, and attorney's fees and costs under the FCBA.

### COUNT II:
### Violation *of the* Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"):
### *Deceptive Conduct*

73. Plaintiffs incorporate and reallege paragraphs 1-65.

74. Mr. Sorrells and Mrs. Sorrells are both a "person" and "consumer" as defined by the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1(c) and 505/1(e).

75. Under the ICFA, it is unlawful for a person to engage in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of any trade or commerce, whether or not any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

76. At all times relevant to this case, SLS was a "person" and engaged in commerce and trade in Illinois in its actions as a mortgage servicer.

77. SLS engaged in the following deceptive conduct in violation of the ICFA:
    i. SLS sent deceptive billing statements and payoff letters as detailed above which included fees, interest, and other charges which SLS was not legally allowed to add to the Sorrells' account;

    ii.    SLS deceptively lied and said it had conducted a reasonable investigation of his account and that it found no errors;

    iii.    SLS deceptively stated through Fred Korb that it would resolve this issue and give the Sorrells compensation for the hardship it caused.

78. SLS knew these representations were false at the time they were made.

79. SLS intended that the Sorrells act on these representations—in fact, SLS intends that consumers rely on and believe all oral and written representations made by their customer service representatives and employees.

80. The Sorrells acted in reliance on these misrepresentations by waiting for SLS to fix its errors, engaging in hundreds of hours of SLS's intentionally defective dispute process, and by foregoing other methods to resolve his outstanding delinquency.

81. Mr. and Mrs. Sorrells have suffered damages as a direct and proximate cause of his reliance on the misrepresentations by SLS: they were forced to hire an attorney to deal with SLS's behavior; they have expended an extremely large amount of time and effort in dealing with this dispute; and they have suffered a tremendous amount of emotional distress, anxiety, fear, and frustration resulting from SLS's behavior.

WHEREFORE, Plaintiff Mr. and Mrs. Sorrells respectfully request this Honorable Court:

    I.    Find that SLS's conduct was deceptive in violation of the ICFA;

    II.    Award Mr. and Mrs. Sorrells actual damages as a result of SLS's violation of the ICFA;

    III.    Award Mr. and Mrs. Sorrells punitive damages as a result of SLS's egregious conduct;

IV. Award Mr and Mrs.. Sorrells their attorneys' fees and costs under the ICFA;

V. Any other such relief this court finds just.

## COUNT III:
### Violation *of the* Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"): *Unfair Conduct*

82. Plaintiffs incorporate and reallege paragraphs 1-65.

83. Mr. Sorrells and Mrs. Sorrells are both a "person" and "consumer" as defined by the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1(c) and 505/1(e).

84. Under the ICFA, it is unlawful for a person to engage in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of any trade or commerce, whether or not any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

85. At all times relevant to this case, SLS was a "person" and engaged in commerce and trade in Illinois in its actions as a mortgage servicer.

86. SLS's actions as described above were contrary to public policy, generally recognized standards of business and industry practice in the mortgage servicing industry.

87. Mr. and Mrs. Sorrells have suffered damages as a direct and proximate cause of SLS's unfair conduct: they were forced to hire an attorney to deal with SLS's behavior; they have expended an extremely large amount of time and effort in dealing with this dispute;

and they have suffered a tremendous amount of emotional distress, anxiety, fear, and frustration resulting from SLS's behavior.

WHEREFORE, Plaintiff Mr. and Mrs. Sorrells respectfully request this Honorable Court:

I. Find that SLS's conduct was unfair in violation of the ICFA;

II. Award Mr. and Mrs. Sorrells actual damages as a result of SLS's violation of ICFA;

III. Award Mr. and Mrs. Sorrells punitive damages as a result of SLS's egregious conduct;

IV. Award Mr. and Mrs. Sorrells their attorneys' fees and costs pursuant to the ICFA;

V. Any other such relief this court finds just.

## COUNT IV:
## Breach of Contract
### *Plead in the Alternative*

1. Plaintiffs incorporate and reallege paragraphs 1-65.

2. The HELOC Agreement represents a contract that was offered to Mr. and Mrs. Sorrells by SLS's predecessor in interest Morgan Stanley Capital.

3. Plaintiffs Mr. and Mrs. Sorrells accepted said contract.

4. The funds under the loan were disbursed.

5. Plaintiffs fulfilled all of their obligations under the Agreement.

6. Defendant SLS breached the Agreement by, including but not limited to:

    i. Improperly adding late fees when the Agreement does not call for late fees;

    ii. Improperly adding late fees to the account prior to the maturity date;

    iii. Demanding a full payoff prior to the maturity date; and

    iv. Sending numerous false statements regarding the status of the account.

7. Mr. and Mrs. Sorrells have suffered damages as a direct and proximate cause of SLS's breach: they were forced to hire an attorney to deal with SLS's behavior; they expended an extremely large amount of time and effort in dealing with this dispute; and they suffered a tremendous amount of emotional distress, anxiety, fear, and frustration resulting from SLS's behavior.

WHEREFORE, Plaintiff Mr. and Mrs. Sorrells respectfully request this Honorable Court:

I. Find that SLS breached the Agreement;

II. Award Mr. and Mrs. Sorrells their actual damages & costs of suit.

Respectfully submitted,

By: */s/Steven J. Uhrich*
One of Plaintiffs' Attorneys

Roger Zamparo, Jr. (3123737)
Steven J. Uhrich (6310369)
ZAMPARO LAW GROUP, P.C.
2300 Barrington Road, Suite 140
Hoffman Estates, IL 60169
T. (224) 875-3202
F. (312) 276-4950
Roger@zamparolaw.com
Steven@zamparolaw.com

## JURY TRIAL

Plaintiffs hereby demand a trial by jury for all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demand that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiffs, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiffs demand that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.